UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**PRIME INSURANCE SYNDICATE, INC.**               CIVIL ACTION

**VERSUS**                                        NO:     04-02680

**BENNIE JEFFERSON, ET AL.**                     SECTION: "F" (4)

REPORT AND RECOMMENDATION

Before the Court is a **Motion to Fix Attorney Fees (R. Doc. 135)**, filed by the Plaintiff, Prime Insurance Syndicate, Inc. ("Prime"), seeking an order from the Court fixing attorney's fees in the amount of $69,523.82. The Defendants, Bennie Jefferson and his company, Maximal Insurance, Inc., filed an opposition memorandum (R. Doc. 136). The parties did not address the issue of costs, and therefore, the determination of costs is not before this Court.

This matter was referred to the undersigned United States Magistrate Judge for a determination of the appropriate amount of attorney's fees and to submit Proposed Findings and Recommendations pursuant to Title 28 U.S.C. § 636(b)(1)(B). The subject motion was heard on August 15, 2007. (R. Doc. 137.)

**I.    Background**

On December 16, 1999 and July 1, 2002, Prime entered into two Surplus Lines Broker Agreements ("agreements") with the Defendants, surplus lines insurance brokers. Under the terms of the agreements, the Defendants were responsible for collecting and remitting premiums and applicable state taxes to Prime, less commissions on the insurance contracts submitted by the

Defendants for coverage. Prime subsequently terminated the agreements and brought suit against the Defendants, alleging that the Defendants owed a total of $113,554.42 under the agreements. (R. Doc. 1, p. 4.)

After a two-day bench trial, on June 6, 2007, United States District Judge Martin L. C. Feldman ("Judge Feldman") entered judgment against the Defendants in the amount of $87,087.81 plus interests and costs. (R. Doc. 116.) Additionally, Judge Feldman awarded Prime attorney's fees incurred in prosecuting the action, and referred the matter to the undersigned magistrate judge for the determination of the fees. (R. Doc. 117.) Consequently, Prime filed the subject motion, seeking an Order from the Court fixing attorney's fees in the amount of $69,523.82.

Both parties agree that Utah law governs the award of attorney's fees, however, they dispute the amount of attorney's fees that Prime is to be awarded.

## II.  Standard of Review

Under Utah law, a trial court possesses the sound discretion to determine an award of attorney's fees, however, the court's exercise of discretion must be based on an evaluation of the evidence in the record. *Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 268 (Utah 1992); *Dixie State Bank v. Bracken*, 764 P.2d 985, 988-89 (Utah 1988). The court need not award the entire amount requested, but must evaluate the requested fee to determine whether a lesser amount is reasonable under the circumstances. *Hoth v. White*, 799 P.2d 213, 220 (Utah App. 1990). The Utah Supreme Court has held that "[r]easonable attorneys fees are not measured by what an attorney actually bills, nor is the number of hours spent on a case determinative in computing fees." *Cabrera v. Cottrell*, 694 P.2d 622, 624 (Utah 1985).

The Utah Supreme Court has specifically enumerated four questions that a trial court must

answer in determining the amount of attorney's fees to be awarded: (1) What legal work was actually performed? (2) How much of the work performed was reasonably necessary to adequately prosecute the matter? (3) Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services? and (4) Are there circumstances which require consideration of additional factors, including those listed in the Utah Code of Professional Conduct[1]? *Dixie State Bank*, 764 P.2d at 990. In addition, in determining the reasonableness of the attorney's fees, the court should consider factors such as (1) the difficulty of the litigation, (2) the efficiency of the attorneys in presenting the case, (3) the reasonableness of the number of hours spent on the case, (4) the fee customarily charged in the locality for similar services, (5) the amount involved in the case and the result attained, and (6) the expertise and experience of the attorneys involved. *Cottonwood Mall Co.*, 830 P.2d at 269. Trial courts should make findings which explain the factors which they consider in awarding attorney's fees, especially if the ultimate award is less than the amount requested. *Hoth*, 799 P.2d at 220.

The party who requests an award of attorney's fees bears the burden to present sufficient

---

[1] Rule 1.5(a) Utah Rules of Professional Conduct states that:
> A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

Utah Rules of Professional Conduct, Rule 1.5(a).

evidence in support of an award. *Cottonwood Mall Co.*, 830 P.2d at 268. Such evidence may be produced by affidavit and should include evidence of (1) the hours spent on the case, (2) the hourly rates charged, (3) and the usual and customary rates for such work. *Id.* The party opposing the award of fees must be provided access to examine supporting documents and an opportunity to contest the accuracy of factual assertions either by counter-affidavit or cross-examination of opposing counsel before the court. *Id.* at 268-69. The trial court must deduct from the total award time spent by counsel on unsuccessful issues, and thus, must determine what costs were attributable to the successful vindication of rights. *Flying J, Inc. v. Comdata Network, Inc.*, No. 96-066BSJ, 2007 WL 3550342, at * 11, n. 16 (D. Utah Nov. 15, 2007).

If the evidence supporting the reasonableness of the requested attorney's fees is (1) adequate and (2) entirely undisputed, the court abuses its discretion in awarding less than the amount requested, unless the reduction is warranted by the four questions. *Hoth*, 799 P.2d at 220. Utah courts have been critical of judges who make an ad hoc fee reduction without expounding upon the factors they considered in arriving at the award. *Brown v. David K. Richards & Co.*, 978 P.2d 470, 474 (Utah App. 1999).

**III.   Analysis**

In support of its motion, Prime's attorneys submit invoices itemizing the professional services that they rendered in the case. (R. Doc. 135-3, Ex. A.) Additionally, Randall A. Smith ("Smith"), lead counsel for Prime, and Barry W. Ashe ("Ashe"), an attorney unaffiliated with the case, submit sworn declarations attesting to the qualifications and experience of Prime's counsel. (R. Doc. 135-4, Ex. B; R. Doc. 135-5, Ex. C.) A total of five attorneys worked on the case, including Smith, Stephen M. Wiles ("Wiles"), J. Geoffrey Ormsby ("Ormsby"), Douglas Scotti

("Scotti"), and Michael W. Hill ("Hill").

In opposition, the Defendants assert that the requested attorney's fees are excessive because the litigation was not difficult or complex, as it merely involved a "single contract." The Defendants stress that trial was conducted in two days with a total of three witnesses called. Furthermore, the Defendants allege that the parties did not file many motions and though the parties amended the pleadings several times, it was only to account for the errors and omissions made in the filings. The Defendants emphasize that the ultimate judgment was less than the amount claimed by Prime.

The Defendants also contend that Prime's counsel's billing invoices contain inconsistent and unreliable entries, including an entry made on May 15, 2007, where the Defendants billed for 0.04 hours of professional services but billed Westlaw research charges of $890.97. In contrast, they note that on June 22 and 23, 2005, the Plaintiffs billed 5.30 and 5.0 respective hours for legal research, while the combined billing for Westlaw for the month only totals $42.98 (R. Doc. 135-3, Ex. A, p. 16.) Finally, the Defendants dispute Prime's attorney's fee entries from September 2005 to February 2006, where the only legal services rendered were memos to file and conferences between co-counsel, rather than professional services for the prosecution of the claim.

Prime requests a total of $69,523.82 in attorney's fees. However, after the Court's recalculation of the fees, minus the fee entries redacted by Prime, the Court determines the total amount of fees actually sought in the billing invoices equals $68,953.06 and the total costs are $5,471.21. There is a difference of $570.76 between Prime's requested fee of $69,523.82 and the Court's figure of $68,953.06. Accordingly, the Court reduces the Prime's fee to the appropriate amount of $68,953.06 and bases its analysis below on the reduced figure.

    A.    **<u>Reasonableness of the Individually Contested Fee Entries</u>**

The Court now considers the Defendants' individualized objections to Prime's fee invoices. The Court first notes that the Defendants' contention that Prime's counsel made an entry of 0.04 hours for professional services rendered on May 15, 2007 is erroneous and reflects a typographical or transcription error by the Defendants. Contrary to the Defendant's assertions, there is (1) no entry in Prime's billing invoices made for May 15, 2007 for 0.04 hours and (2) no attorney's entry made in an increment of one-hundredths of an hour in all of Prime's invoices. All of Prime's attorneys' entries are billed in one-tenths of an hour[2]. (R. Doc. 153, Ex. A, p. 59.) .

Furthermore, despite Westlaw charges of $890.97 in May of 2007, the Court notes that Prime's counsel did not specifically bill for any "research" rendered in the month of May 2007. (R. Doc. 135-3, Ex. A, p. 61.) In fact, Prime made no court filings in May of 2007 and only made three filings in June of 2007 that contained legal research that might have warranted requested costs in the amount of $890.97, including Plaintiff's Proposed Findings of Fact and Conclusions of Law (R. Doc. 109), Plaintiff's Memorandum on Exhibits (R. Doc. 111), and Plaintiff's Pre-Trial Memorandum (R. Doc. 112). In the relevant filings, Prime's counsel cited to and quoted a total of fourteen (14) unique cases, treatises, and statutes. Therefore, while their billing entries might not reflect any research performed on the motion, the Court concludes that the work product of Prime's attorneys is not inconsistent with such Westlaw charges.

The Court is also unconvinced that a bill of $42.98 in Westlaw charges is inconsistent with research of 10.30 hours. Attorneys often consult other legal research sources other than Westlaw, including law libraries, governmental and educational databases, and specialized internet search

---

[2] The Court notes, however, that there is one entry made by a paralegal for 0.25 hours. (R. Doc. 135-3, Ex. A, p. 63.) Otherwise, all other entries in the sixty-three (63) page invoice are billed in increments of one-tenth an hour.

engines. Attorneys are not limited to exclusively conducting legal research on Westlaw or Lexis-Nexis. Thus, simply because Prime's counsel expended 10.30 hours researching and only billed for $42.98 in Westlaw charges in June of 2005 does not indicate that the billing invoices are incorrect. Therefore, after considering the Defendants' arguments regarding alleged discrepancies between the Westlaw charges and time billed for research in the fee petition, the Court does not find that the requested fees should be reduced on these bases.

Now that the Court has discounted the Defendants' arguments regarding specific charges, the Court proceeds to the Defendants' general arguments regarding the reasonableness of the fees. The Court reviews the fees under the four questions set forth in Utah law.

**B. Reasonableness of the Total Fee**

**1. Legal Work Actually Performed**

First, Utah law requires the Court to consider the legal work actually performed by counsel. *Dixie State Bank*, 764 P. 2d at 990. The party requesting the fee must provide an affidavit in support of the amount requested, setting forth (1) the nature of the work performed, (2) the hours spent in prosecuting the claim to judgment, (3) the hours worked by those other than the attorneys, and (4) an explanation of the time spent, work done, and hourly charge billed. *Id.* at 990, n. 8. Here, Prime provided the Court with sixty-three (63) pages of invoices that its counsel submitted for payment. (R. Doc. 135-3, Ex. A.) The invoices reveal that Prime paid these bills as they came due. Prime's itemized billing statements document (1) work that its counsel performed, (2) the hours spent in litigating the case to judgment, and (3) the hours worked by paralegals. Furthermore, counsel for Prime has provided an affidavit attesting to the veracity of the billing records. (R. Doc. 135-4, Ex. B.)

Despite Prime's submissions, the Court finds that the invoice entries lack the requisite descriptiveness for a full award of the requested fees. For example, counsel claims 0.20 hours to "Review correspondence and confer." (R. Doc. 135-3, Ex. A, p. 3.) Counsel does not specify (1) who generated the correspondence, (2) to whom the correspondence was directed, and (3) what the correspondence pertained to. Neither does counsel indicate who was involved in the subsequent conference. From counsel's limited description, it is unclear how these activities are relevant to this case. There are numerous such nondescript fee entries throughout Prime's invoices. Similarly, counsel also lists single-line fee entries for the "[r]eview [of] multiple pleadings; conference; e-mails" (R. Doc. 135-3, Ex. A, p. 7),"[c]onference pre and post deposition" (R. Doc. 135-3, Ex. A, p. 8), and "[r]eceive correspondence and transmit." (R. Doc. 135-3, Ex. A, p .41). The Court notes that these entries are among the many that do not sufficiently describe the nature of the work performed for the award of fees. In light of these deficiencies, the Court reduces Prime's requested fees and eliminates those entries which do not contain a sufficient explanation regarding the legal work performed.

The Court also notes that Prime's counsel charged a substantial amount of fees for paralegal work that is more appropriately billed as administrative overhead. To recover for paralegal fees, the services rendered by the paralegal must be legal in nature, or work traditionally performed by an attorney. *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325, n. 1 (5th Cir. 1980); *see Baldwin v. Burton*, 850 P.2d 1188, 1200 (Utah 1993). Work that is legal in nature includes factual investigation, locating and interviewing witnesses, assisting in discovery, compiling statistical and financial data, checking legal citations, and drafting correspondence. *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989). Legal activities undertaken by paralegals must be distinguished from activities that

are clerical or secretarial in nature, including typing, copying, or delivering pleadings. *Id.* Clerical and secretarial tasks cannot be billed at paralegal rates. *Id.*

Here, Prime charges as paralegal work 0.10 hours for the printing of cases (R. Doc. 135-3, Ex. A, p. 6), 0.10 hours for confirming the receipt of a facsimile (R. Doc. 135-3, Ex. A, p. 12), 1.50 hours for service of summons (R. Doc. 135-3, Ex. A, p. 13), and a portion of 1.10 hours for scanning and email of a deposition transcript (R. Doc. 135-3, Ex. A, p. 42). These activities do not constitute "legal work" billable at the paralegal rate, but rather, are administrative activities. Therefore, the Court reduces these entries and the other similar entries from the ultimate amount to be awarded.

Additionally, the Court notes that the billing invoices reflect charges by Sarah Rosenblum ("Rosenblum"), an individual whose work was charged at the paralegal rate. (R. Doc. 135-3, Ex. A, pp. 60-61). It is unclear whether Rosenblum is a paralegal, or if she is an administrative assistant or summer associate billed at the paralegal rate. As the party requesting the fees, Prime bears the burden to present sufficient evidence in support of an award. *See Cottonwood Mall Co.*, 830 P.2d at 268. Here, Prime has not provided any identifying information as to the qualifications of or position occupied by Rosenblum either in the fee invoices or affidavits. Therefore, the Court disallows recovery for work performed by Rosenblum in connection with this fee request.

Finally, the Court notes that counsel systematically engaged in block-billing by billing multiple legal activities in one billing entry. For instance, counsel indicates that on June 21, 2005, Wiles spent four (4) hours to:

> Assemble and review documents for Maximal corporate depo; prepare witness interrogation/depo prep; telephone conference with M. Fisher; telephone conference with Deep South re: Bennie's assets; email Jack McDonnell; receipt and review Deep South investigative file on Bennie Jefferson; telephone conference with S. Borne; revise letter to Magistrate Judge; telephone conference with P. Anderson; conference

9

with RAS; short report to M. Fischer.

(R. Doc. 135-3, Ex. A, p. 8.)  Counsel's block-billing makes it difficult for the Court to segregate excessive or unnecessary litigation bills from valid billing entries.  Specifically, these amalgamated entries masquerade the time Prime's attorneys spent on the various tasks.

Utah law does not explicitly prohibit block-billing, therefore, the Court looks to persuasive federal authority which holds that block-billing adversely impacts the determination of the reasonableness of the requested fees.  Under federal case law, the practice of block-billing is disfavored because it is not the province of the Court to approximate how much time was spent on each activity in block-billed entries.  See *Cristancho v. National Broadcasting Co., Inc.*, 117 F.R.D. 609, 611 (N.D. Ill. 1987) (denying fees because of substantial block-billing); *In re Chicago Lutheran Hospital Assn.*, 89 B.R. 719, 735 (Bankr. N.D. Ill. 1988) (denying payment for all block-billed entries).  Given that many of Prime's entries were obscured by block-billing, the Court concludes that Prime has not clearly shown how counsel spent their time to warrant a determination that its requested fees are reasonable.  Where Prime's block-billed entries contained more than one questionable billing entry, the Court reduced the entire entry from the requested fee amount.

In sum, based on the collective considerations above, the Court finds that Prime's counsel failed to adequately set forth the nature of the work performed and explain the time spent.  Therefore, the Court finds that the first question weighs against awarding Prime's requested attorney's fees and reduces the requested fee accordingly.

### 2.     **<u>Work Reasonably Necessary to Prosecute the Matter</u>**

The second question under Utah law pertains to whether the amount of the work performed was reasonably necessary to adequately prosecute the matter.  *Dixie State Bank*, 764 P. 2d at 990.

Here, the Court preliminarily notes this breach of contract case was not a complex one. Therefore, in assessing what legal work was necessary to prosecute the matter, the Court considers the work performed in relation with the difficulty of the case. Here, five total attorneys worked on the case on behalf of Prime. While the Court acknowledges that one attorney, Wiles, left the firm during the pendency of these proceedings, the Court nevertheless concludes that Prime overstaffed this uncomplicated breach of contract case. After reviewing the entries, the Court finds the excessive staffing contributed to the performance of work which was not "reasonably necessary" in the prosecution of the matter for the reasons discussed below. Although the case ultimately proceeded to trial with a judgment for Prime and that Prime redacted various entries purportedly unrelated to the fee application, the Court's conclusion remains the same. *But see Flying J Inc., 2007 WL 3550342*, at *20 (reasoning that because counsel ultimately prevailed suggests that they invested the necessary litigation resources in its suit).

The Court now examines the Defendants' arguments regarding the reasonableness of the requested fees. The Defendants contend that the Prime's entries from September 2005 through February 2006 for work in preparing memoranda to file or for conferences between co-counsel do not constitute professional services rendered in the prosecution of the claim.

As to the "memo to file" entries, the Court concludes that Prime's attorneys did not specify the legal purpose of those memos and how those memos advanced the case or otherwise assisted in the litigation of the matter. From page fifteen (15) to page thirty (30), Prime's fee application contains seventeen (17) simple billing entries for a "Memo to file/R.Smith," or a variation thereof. (R. Doc. 135-3, Ex A, pp. 15-30.) There is no additional information in those entries as to what those memos regarded. The record illustrates that Prime made no filings with the Court during those

11

billing months of September 2005 through February 2006, and yet accumulated fees of $1,919.25 in conferences and in writing memos to file. Given the lack of substantive activity on the docket and the lack of descriptiveness in the fee entries for memos to file, the Court finds that the entries for memos to file during this time period reflect work that was not reasonably necessary in the prosecution of the matter. As indicated above, Utah law places the burden on the party requesting attorney's fees to present sufficient evidence in support of an award. *Cottonwood Mall Co.*, 830 P.2d at 268. The Court concludes that Prime has failed to present sufficient evidence as to how the memos advanced the prosecution of the claim. Accordingly, the Court excludes these nondescript entries made for memos to file from the award of attorney's fees.

With respect to the conferences between Prime's co-counsel, the Court finds that counsel systematically double billed for such internal conferences. As an example, on November 22, 2005, the lead attorney, Smith, billed 0.2 hours for a "[c]onference with co-counsel and client." (R. Doc. 135-3, Ex. A, p. 23.) The only other entry on that date indicates that SMW, or "Wiles" also billed for a "[c]onference with R. Smith." (R. Doc. 135-3, Ex. A, p. 23.) Similarly, counsel made two fee entries for December 12, 2007. (R. Doc. 135-3, Ex. A, p. 25.) First, "RAS" or "Smith" had a 0.1 hour-long "[m]eeting with co-counsel." (R. Doc. 135-3, Ex. A, p. 25.) On the same day, the only other entry is made by counsel is entered by "SMW" or "Wiles," who indicates that he engaged in a "[s]trategy and planning session with R. Smith." (R. Doc. 135-3, Ex A, p. 25.) These entries appear to bill twice for the same event. This duplicative billing is pervasive throughout the fee invoices. Accordingly, the Court exercises its discretion and strikes the duplicative fees submitted by Prime's counsel.

Finally, Prime's counsel requests paralegal fees for "Westlaw research regarding FRCP

12

changes." (R. Doc. 135-3, Ex. A, p. 32). The Court concludes that research on revisions to the Federal Rules is not appropriately billed to a specific client. Rather, such activities should be classified as general education for the attorneys or legal assistants in a law firm. Therefore, the Court determines that research into the changes of the Federal Rules is not reasonably necessary to prosecute the matter, and therefore, the Court redacts this fee entry.

In light of these considerations above, the Court concludes a fee of $68,953.06 does not reflect work that was reasonably necessary to prosecute the matter. The Court notes that the numerous memos to file and conferences were not reasonably necessary for the prosecution of the matter, but were likely triggered by the overstaffing of the case. Therefore, the Court reduces the requested fee for the reasons discussed above.

### 3. Counsel's Billing Rate Is Not Consistent With Customary Rates Charged in the Locality

The third question under Utah law asks whether the attorney's billing rate is aligned with the customary rates charged in the locality for similar services. *Id.* at 990, n. 10. Smith, lead counsel in the case, attests that he has practiced law for twenty-five (25) years and his standard hourly billing rate during his representation of Prime was $350.00 an hour. (R. Doc. 135-4, Ex. B.) However, he discounted his rate by 10% to $315.00 per hour for Prime. (R. Doc. 135-4, Ex. B.) His firm similarly discounted the rates for the associates and paralegals who worked on the case by 10%. (R. Doc. 135-4, Ex. B.) Specifically, Prime was billed hourly rates of $247.50 for Wiles and Ormsby, $175.50 for Scotti, and $67.50 for its college-educated and trained paralegals. (R. Doc. 135-4, Ex. B; R. Doc. 135-5, Ex. C.)

Smith received his Juris Doctorate from Yale Law School in 1982 and clerked for United

States District Court Judge Charles Schwartz, Jr., for one year. (R. Doc. 135-4, Ex. B.) Thereafter, he primarily practiced complex litigation and has practiced for over 11 years as an associate and later as a partner, before forming his own firm, where he has practiced in upwards of 13 years. (R. Doc. 135-4, Ex. B.) At the time of the proceedings, Wiles had practiced law for over 15 years; Ormsby had practiced law for over 11 years; and Scotti had practiced law for over 4 years.

In support of its counsel's hourly rates, Prime submitted an affidavit by Ashe, an outside attorney, in which Ashe attested that the rates charged by the attorneys and paralegals working on the matter were reasonable. He further asserts that the rates are similar to the rates charged by attorneys and paralegals at his firm with similar levels of education and experience. (R. Doc. 135-5, Ex. C.) The Defendants do not dispute the claimed rates.

According to Utah law, expert affidavits must include specific facts supporting the expert's conclusion. [Salmon v. Davis County, 916 P.2d 890, 894](#) (reasoning that cursory and conclusory analysis in an expert affidavit undermines the credibility and reliability of the underlying testimony in an attorney's fee case). Furthermore, a court's determination of reasonableness is not bound by the prevailing party's affidavit or assertion of what constitutes a reasonable attorney's fee. [Amyx v. Columbia House Holdings, Inc., 110 P.3d 176, 177 (Ut. App. 2005)](#)

Here, the Court finds that Prime's assertions that the hourly rates billed by its counsel are consistent with prevailing market rates to be unavailing. Neither Smith's nor Ashe's supporting affidavit specify any rates from the market, nor does Ashe's affidavit provide comparison rates from his own firm. Rather, Smith and Ashe merely make a conclusory legal judgments that they believe the rates to be reasonable, which is ultimately an issue for the Court to decide. Ultimately, both Smith and Ashe fail to substantiate their assertions with evidence of the rates in the vicinity in

similar cases. Therefore, the Court finds that the affidavits submitted by Prime are of no substantive value in determining the appropriate rate as charged in the locality. Additionally, the Court notes that it is of no consequence that Prime's attorneys charged Prime the same rates as it requests in the subject application. Merely because an attorney charges a fee to his or her client does not make such a fee reasonable. *See Cabrera*, 694 P.2d at 624 ("Reasonable attorneys fees are not measured by what an attorney actually bills, nor is the number of hours spent on a case determinative in computing fees.").

Having discounted the value of the affidavits in determining the rate, the Court looks to other breach of contract cases in this jurisdiction involving attorneys of similar experience. Federal district courts in the Eastern District of Louisiana systematically find prevailing New Orleans market rates to fall within $175.00 and $250.00 an hour. *Tasch, Inc. v. Unified Staffing & Associates, Inc.*, No. 02-03531, 2003 WL 23109790 (E.D. La. Dec. 30, 2003) (awarding counsel fees at a rate of $150.00 an hour in a breach of contract case); *see also White v. Imperial Adjustment Corp.*, No. 2005 WL 1578810, at *7-8 (E.D. La. Jun. 28, 2005) (noting that rates between $150.00 to $250.00 typical of the area and reasoning that while extremely qualified and experienced attorneys practicing in the district "might" charge hourly rates of $375.00 to $400.00 an hour, those rates are only charged for trial work and lower rates should be charged for routine work requiring less extraordinary skill and experience). In fact, in a decision rendered in 2006, United States District Judge Carl Barbier reasoned that a requested attorney's fee rate of "$310.00 . . . far exceeds the prevailing rate in this district." *Delor v. Intercosmos Media Group, Inc.*, No. 2006 WL 435997, at *3 (E.D. La. Nov. 3, 2005).

The Court notes that Smith attested in his affidavit that he has primarily practiced complex

15

litigation in his career as an attorney. While his standard hourly rate is $350.00 an hour and his discounted hour rate is $315.00, the Court reasons that these rates apply to his standard practice in complex litigation. The breach of contract case here is not complex and therefore does not warrant such a significant fee rate as the rates usually charged to Smith's clients.

Based on the range of fees awarded in this district, the Court reduces the award of attorney's fees to rates (1) more consistent with prevailing rates and (2) more indicative of this straightforward breach of contract matter. Based on the record, the facts of the case, and the prevailing market rates, the Court finds that an award of $265.00 an hour to Smith, $200.00 an hour to Wiles and Ormsby, and $125.00 an hour to Scotti are appropriate here. The Court further concludes that the rate charged for paralegal service of $67.50 is consistent with the prevailing market rates for paralegals. *See Speaks v. Kruse,* No. 04-1952, 2006 WL 3388480, at *4 (E.D. La. Nov. 20, 2006) (finding that reasonable and appropriate paralegal rates in this district ranged from $50.00 to $75.00 an hour).

After subtracting counsel's self-imposed redactions, the invoices indicate that (1) Smith performed 65.30 hours of work, (2) Wiles performed 82.50 hours[3] of work, (3) Ormsby performed 93.00 hours[4] of work, and (4) Scotti performed 9.60 hours[5] of work. The Court notes that though the invoices reflect work performed by Hill, Prime redacted all entries relating to Hill. (R. Doc. 135-3, Ex. A.) Additionally, the paralegals performed 42.75 hours[6] of work. After implementing the

---

[3] The Court arrived at this total after subtracting Prime's redactions on pages 3, 5 to 8, 14, and 19 of its invoices. (R. Doc. 135-3, Ex. A, pp. 3, 5-8, 14, 19.)

[4] The Court arrived at this total after subtracting Prime's redactions on pages 42, 46, and 48 of its invoices. (R. Doc. 135-3, Ex. A, pp. 42, 46, 18.)

[5] The Court arrived at this total after subtracting Prime's redaction on page 2 of its invoices. (R. Doc. 135-3, Ex. A, p. 2.)

[6] The Court arrived at this total after subtracting Prime's redactions on pages 9, 10, 12-13, and 16 of its invoices. (R. Doc. 135-3, Ex. A, pp. 9-10, 12-13, 16.)

Court's above-mentioned reductions, the Court determines that (1) Smith performed 61.70 hours of compensable work, (2) Wiles performed 68.00 hours of compensable work, (3) Orsmby performed 91.90 hours of compensable work, (4) Scotti performed 8.3 hours of compensable work, and (5) the paralegals performed 39.15 hours of compensable work. Based on these rates and figures, the Court recalculates the fee to be $52,010.62.

### 4.  Consideration of Additional Factors

For the fourth and final question, the Court concludes that neither party has established that the circumstances of the case require the consideration of the additional factors under the Utah Code of Professional Responsibility. *See id.* at 990. Nevertheless, the Court briefly entertains the six other additional considerations set forth under Utah law, and stated above, in assessing the reasonableness of requested fees. *See Cottonwood Mall Co., 830 P.2d at 269*. The Court only considers those elements not addressed or subsumed in the analysis above. There are two such additional elements.

First, the Court determines that given the nature of the contested contract dispute and the dollar amount that the Plaintiffs contended was at stake, the attorneys' activities and the hours spent on each task appear on the whole, to be excessive, as the matter was a relatively simple breach of contract matter that did not present convoluted issues of fact or law. Second, Prime prevailed at trial and was awarded damages of $87,087.01 of the requested $113,554.42 amount, therefore, the result attained by Prime's counsel was successful.

Ultimately, the Court's consideration of these elements illustrate the disproportionate nature of the requested fees in relation to the work performed, the type of case, and the amount at stake. While Utah case law suggests that the proportionality between the wages and the damages requested is not a dispositive consideration in assessing the reasonableness of fees, the Court concludes that

the disproportionality in addition with the other factors examined above warrant a reduction of the requested fee. *See Cabrera*, 694 P.2d at 625 (reasoning that "[t]he amount of the damages awarded in a case does not place a necessary limit on the amount of attorneys fees that can be awarded."). In review, after collectively considering the various factors under Utah law, the Court concludes that the factors further sustain the reduction in Prime's requested fee of $69,523.82 to $52,010.62, which is a reasonable fee in this matter.

## IV.   Conclusion

Accordingly,

**IT IS RECOMMENDED** that the Plaintiff's **Motion to Fix Attorney Fees (R. Doc. 135)** be **GRANTED**. The Court finds that the requested fees in the amount of **$52,010.62** are reasonable in this matter.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this   25th   day of January 2008

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**